**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BUZZFEED, INC. and BEN SMITH,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, JAMES COMEY, and JAMES CLAPPER,<br><br>*Defendants*. | Case No. 1:17-mc-02429-APM |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

I.       The Article and the Florida Litigation ............................................................. 2

II.      Buzzfeed's Subpoenas and the Government's Responses .................................. 4

III.     The Motion to Compel ....................................................................................... 6

LEGAL STANDARD ...................................................................................................... 8

ARGUMENT ................................................................................................................. 11

I.       The Testimony Sought is Not Relevant to the Florida Litigation ................... 12

         a.      The Article admits that it is not a report on official government proceedings. .... 15

         b.      The Article does not report on any official government proceeding. ................... 16

         c.      To the extent that any government activity is referenced in the Article, it does
                 not encompass the allegedly defamatory statements. ........................................... 20

II.      The Testimony Sought Would Impose an Undue Burden on the Government ............... 23

         a.      Buzzfeed's subpoena is unreasonably cumulative. .............................................. 23

         b.      Buzzfeed's subpoena seeks information not previously disclosed by
                 Government Respondents. .................................................................................... 26

         c.      Buzzfeed's subpoena does not serve the public interest. ..................................... 30

III.     The Testimony Sought is Protected by the Law Enforcement Investigatory Privilege .... 31

         a.      The testimony requested by Buzzfeed falls squarely within the scope of the law
                 enforcement privilege. ........................................................................................... 33

         b.      Buzzfeed has not carried its burden to overcome the proper assertion of the law
                 enforcement privilege. ........................................................................................... 35

CONCLUSION ............................................................................................................... 37

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*A.N.S.W.E.R. Coalition v. Jewell*,
  292 F.R.D. 44 (D.D.C. 2013) ................................................................. 32, 35, 36

*AF Holdings, LLC v. Does 1-1058*
  752 F.3d 990 (D.C. Cir. 2014) ........................................................................ 9, 22

*Alexander v. FBI*,
  186 F.R.D. 21 (D.D.C. 1998) ................................................................................ 9

*Alexander v. FBI*,
  186 F.R.D. 154 (D.D.C. 1999) ............................................................................ 31

*Arieff v. U.S. Dep't of Navy*,
  712 F.2d 1462 (D.C. Cir. 1983) ..................................................................... 31-32

*Bartko v. Dep't of Justice*,
  62 F. Supp. 3d 134 (D.D.C. 2014) ..................................................................... 26

*Biro v. Conde Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012) ............................................................... 18

*Bobreski v. U.S. EPA*,
  284 F. Supp. 2d 67 (D.D.C. 2003) ................................................................. 30-31

*Bufalino v. Associated Press*,
  692 F.2d 266 (2d Cir. 1982) .............................................................................. 16

*Chowolsky v. Civiletti*,
  69 A.D.3d 110 (N.Y. 2009) ............................................................................... 14

*Coleman v. District of Columbia*,
  275 F.R.D. 33 (D.D.C. 2011) ......................................................................... 9, 15

*Commonwealth of Puerto Rico v. United States*,
  490 F.3d 50 (1st Cir. 2007) ................................................................................ 34

*Corp. Training Unlimited, Inc. v. Nat'l Broad. Co. Inc.*,
  868 F. Supp. 501 (E.D.N.Y. 1994) .................................................................... 20

*Crawford-El v. Britton*,
  523 U.S. 574 (1998) .......................................................................................... 11

*Dameron v. Washington Magazine, Inc.*,
  779 F.2d 736 (D.C. Cir. 1985) ............................................................... 13, 16, 19

*Davis Enterprises v. EPA*,
  877 F.2d 1181 (3d Cir. 1981) ............................................................................ 24

i

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
  34 F.3d 774 (9th Cir. 1994) ................................................................ 10, 11, 31

*Fine v. ESPN, Inc.*,
  11 F. Supp. 3d 209 (N.D.N.Y. 2014) ...................................................... 20, 21, 22

*Fitzgibbon v. CIA*,
  911 F.2d 755 (D.C. Cir. 1990) ............................................................. 26

*Food Lion v. United Food & Commercial Workers Int'l Union*,
  103 F.3d 1007 (D.C. Cir. 1997) ............................................................ 9, 22

*Freeze Right Refrigeration and Air Conditioning Services, Inc. v. City of New York*,
  101 A.D.2d 175 (quoted in MTC at 15) ...................................................... 17-18

*Fridman v. Bean LLC a/k/a Fusion GPS*,
  No. 17-cv-2041 (D.D.C. Oct. 3, 2017) ...................................................... 24

*FTC v. Timeshare Mega Media & Mktg. Grp., Inc.*,
  No. 10-civ-62000, 2011 WL 6102676 (S.D. Fla. Dec. 7, 2011) ............................... 33, 34

*Global Relief Found., Inc. v. N.Y. Times Co.*,
  No. 1:01-cv-08821 (N.D. Ill.), *aff'd* 390 F.3d 973 (7th Cir. 2004) ....................... 29

*Global Relief Found., Inc. v. O'Neill*,
  315 F.3d 748 (7th Cir. 2002) ............................................................. 29

*Herbert v. Lando*,
  441 U.S. 153 (1979) ...................................................................... 9

*In re: Micron Technology, Inc. Sec. Litig.*,
  264 F.R.D. 7 (D.D.C. 2010) ............................................................... 28

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ............................................................ 36, 37

*In re Sealed Case*,
  856 F.2d 268 (D.C. Cir. 1988) ............................................................ 11, 36

*In re: Packaged Ice Antitrust Litig.*,
  No. 08-md-01952, 2011 WL 1790189 (E.D. Mich. May 10, 2011) ............................... 35

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
  337 F. Supp. 2d 146 (D.D.C. 2004) ....................................................... 33

*Leopold v. Dep't of Treasury*,
  No. 16-cv-1827-KBJ (D.D.C.) .............................................................. 32

*McPeek v. Ashcroft*,
  202 F.R.D. 332 (D.D.C. 2001) ............................................................. 32

ii

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
  894 F.2d 1318 (Fed. Cir. 1990) ...................................................... 10

*Miller v. Mehltretter*,
  478 F. Supp. 2d 415 (W.D.N.Y. 2007) ........................................... 33

*Moore v. Armour Pharm. Co.*,
  129 F.R.D. 551 (N.D. Ga. 1990) ..................................................... 31

*OAO Alfa Bank v. Center for Public Integrity*,
  387 F. Supp. 2d 20 (D.D.C. 2005) ....................................... 13, 16, 19

*Ortega Trujillo v. Banco Cent. Del Ecuador*,
  17 F. Supp. 2d 1334 (S.D. Fla. 1998) ............................................. 13

*Ortega v. Post-Newsweek Stations, Florida, Inc.*,
  510 So. 2d 972 (Fla. Dist. Ct. App. 1987) ...................................... 13

*Peskoff v. Faber*,
  244 F.R.D. 54 (D.D.C. 2007) .......................................................... 30

*Premier Election Solutions, Inc. v. Systest Labs, Inc.*,
  No. 09-01822, 2009 WL 3075597 (D. Colo. Sept. 22, 2009) ............ 8-9

*Reid v. Cumberland Cty.*,
  34 F. Supp. 3d 396 (D.N.J. 2013) ................................................... 36

*SEC v. Merkin*,
  No. 11-23585, 2012 WL 2568158 (S.D. Fla. June 29, 2012) ............ 36

*Shah v. Dep't of Justice*,
  89 F. Supp. 3d 1074 (D. Nev. Feb. 2, 2015) ................................... 34

*St. John v. Napolitano*,
  No. 10-216, 2011 WL 1193009 (D.D.C. Mar. 31, 2011) ........... 10, 14-15

*Steven H. v. Duval Cty. Sch. Bd.*,
  No. 99-500-CIV-J-20C, 1999 WL 1427666 (M.D. Fla. Sept. 3, 1999) ........... 18

*In re Motion to Compel Compliance with Subpoena Directed to Dep't of Veterans Affairs*,
  257 F.R.D. 12 (D.D.C. 2009) ................................................. 9, 10, 12

*Tax Analysts v. IRS*,
  294 F.3d 71 (D.C. Cir. 2002) ......................................................... 32

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*,
  242 F.R.D. 1 (D.D.C. 2007) .............................................................. 9

*Town of Sw. Ranches v. U.S. Dep't of Homeland Sec., Immigration & Customs Enf't*,
  No. 15-CV-21924, 2016 WL 4264049 (S.D. Fla. Aug. 12, 2016) ......................... 24

*Tuite v. Henry*,
    98 F.3d 1411 (D.C. Cir. 1996) ............................................................. 11

*Tuite v. Henry*,
    181 F.R.D. 175 (D.D.C. 1998), *aff'd in* 203 F.3d 53 (D.C.Cir.1999) ................... 32

*United Am. Fin. v. Potter*,
    667 F. Supp. 2d 49 (D.D.C. 2009) ...................................................... 33

*United States ex rel.* Touhy *v. Ragen*,
    340 U.S. 462 (1951) ....................................................................... 5

*United States v. Farley*,
    11 F.3d 1385 (7th Cir. 1993) ............................................................ 36

*Von Kahl v. Bureau of National Affairs, Inc.*,
    810 F. Supp. 2d 138 (D.D.C. 2011) .................................................... 15

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007) ................................................... *passim*

*Wenz v. Becker*,
    948 F. Supp. 319 (S.D.N.Y. 1996) ..................................................... 18

*White v. Fraternal Order of Police*,
    909 F.2d 512 (D.C. Cir. 1990) ..................................................... 13, 15

## Statutes

Fed. R. Civ. P. 26 .......................................................... *passim*

Fed. R. Civ. P. 45 ..................................................... 11, 12, 31

RESTATEMENT (SECOND) OF TORTS § 611 cmt. d (1977) ........................ 13

## Administrative and Executive Materials

28 C.F.R. §§ 16.21-16.29 ................................................... 5, 6

32 C.F.R. § 1703.4(c)(5) ........................................................ 6

Executive Order No. 13,526 ...................................................... 6

## **INTRODUCTION**

BuzzFeed, Inc. and Ben Smith (collectively, "Buzzfeed") have moved to compel compliance with third-party subpoenas seeking irrelevant and privileged testimony from the Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), the Office of the Director of National Intelligence ("ODNI"), former FBI Director James Comey, and former Director of National Intelligence James Clapper (collectively, "the Government" or "Government Respondents"), allegedly to substantiate Buzzfeed's defenses in a private defamation action. Specifically, Buzzfeed has been sued for publishing false statements about a Russian individual and his web-development company, in a document included in an online article that Buzzfeed published on its website on January 10, 2017. According to the Article, this document, which Buzzfeed refers to in its motion as "the Dossier," contains "explosive—but unverified— allegations" about President Trump and other persons and entities. Although the Article states that Buzzfeed decided to publish the so-called Dossier to provide readers an opportunity to "make up their own mind" about its explosive but unverified allegations, Buzzfeed now contends in its motion to compel that the Article is nothing more than a report on official government proceedings. Buzzfeed believes that protections normally afforded actual reports of government proceedings should shield it from liability for any defamatory statements in the so-called Dossier. Thus, relying on a gross mischaracterization of its Article, Buzzfeed seeks to enlist this Court and several federal agencies and intelligence community officials in its effort to avail itself of those protections.

The Court should not allow Buzzfeed to transfigure its Article in order to elicit testimony from the Government on highly sensitive topics, for a lawsuit in which the Government is not a party and has no interest. Rather, the Court should deny the motion to compel for any of three separate and independent reasons: (1) the third-party subpoena seeks information irrelevant to the

1

underlying litigation; (2) the subpoena imposes an undue burden on the Government; and (3) the testimony sought is protected by the law enforcement privilege.  That privilege prevents parties from obtaining discovery about a pending law enforcement investigation that could interfere with the investigation – even when those parties are engaged in litigation around the truth or falsity of news reports allegedly related to the investigation.  For these reasons, the subpoena is not proper under Rules 45 and 26 of the Federal Rules of Civil Procedure, and the motion to compel should be denied.

## BACKGROUND

### I.    The Article and the Florida Litigation

The lawsuit to which the third-party subpoenas relate, *Gubarev v. BuzzFeed*, No. 17-cv-60426 (S.D. Fla.), arises out of an Article Buzzfeed published on its website on January 10, 2017.  *See* ECF No. 1 (Motion to Compel, hereinafter "MTC") MTC at 2; ECF No. 1-1 (Declaration of Nathan Siegel, hereinafter "Siegel Decl."), Ex. 1 (Florida Complaint) ¶¶ 1, 23; Ken Bensinger, et al., *These Reports Allege Trump Has Deep Ties to Russia*, BuzzFeed (Jan. 10, 2017), available at: https://www.buzzfeed.com/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia?utm_term=.ltkm4kD4GB#.ykMKP2mP8Y (hereinafter "Article").  The three-page Article consists of less than 500 words of text and an embedded 35-page document that Buzzfeed calls the "Dossier."  *See* MTC at 1-3; Article at 3; Siegel Decl., Ex. 1 at 22 (Florida Complaint, Ex. 3 (embedded document)).[1]

According to the Article, the so-called Dossier is "a collection of memos written over a period of months, [which] includes specific, unverified, and potentially unverifiable allegations of

---

[1] The full text of Buzzfeed's Article can be found at the end of the Government's opposition, in Appendix A.  For clarity, the Government will refer to the document embedded in the Article herein as the "so-called Dossier."

contact between Trump aides and Russian operatives, and graphic claims of sexual acts documented by the Russians." Article at 2.  The article admits that "BuzzFeed News reporters in the US and Europe have been investigating various alleged facts in the dossier but have not verified or falsified them." *Id.*  Notwithstanding that admission, the Article goes on to explain that "BuzzFeed News is publishing the full document so that Americans can make up their own minds about allegations about the president-elect that have circulated at the highest levels of the US government." *Id.*

Plaintiffs in the Florida litigation, Aleksej Gubarev, XBT Holding S.A., and Webzilla, Inc. (hereinafter "Plaintiffs") allege that the penultimate paragraph of the so-called Dossier contains defamatory assertions that have no basis in fact.  *See* Florida Complaint ¶¶ 25-28.  According to Plaintiffs, Buzzfeed knew that there were "solid reasons to distrust the veracity of the allegations contained" in the so-called Dossier but took no steps to confirm those allegations, contact Plaintiffs, or redact their names from the document embedded in the Article.  *Id.* ¶¶ 29-33.  The Florida Complaint asserts claims of defamation and defamation *per se* and seeks damages in excess of $15,000 and, possibly, punitive damages.  *Id.* at 10-11.

Plaintiffs originally filed their defamation suit in Florida state court but Buzzfeed removed it to the Southern District of Florida.  *See Gubarev v. BuzzFeed*, No. 17-cv-60426 (S.D. Fla.), ECF No. 1.  Buzzfeed then moved to dismiss the case, and the district court denied that motion. *Gubarev*, No. 17-cv-60426, ECF Nos. 15, 27.  Buzzfeed subsequently raised eight affirmative defenses in its answer.  *See* Siegel Decl., Ex. 2 (Amended Answer) at 9-10. Since then, discovery has commenced in the Florida litigation and remains ongoing.  *See, e.g.*, *Gubarev*, No. 17-cv-60426, ECF No. 80 (Buzzfeed's opposition to compel disclosure of identity of source who provided the so-called Dossier).

## II.     Buzzfeed's Subpoenas and the Government's Responses

In June and July of 2017, Buzzfeed served seven third-party subpoenas on the Government, various intelligence agencies or intelligence-agency officials—specifically, DOJ, FBI, ODNI, Former FBI Director James Comey, Former DNI James Clapper, the Central Intelligence Agency ("CIA"), and former CIA Director John Brennan.[2]  Pursuant to an agreement between the parties, the Government responded to the subpoenas served on CIA, Mr. Brennan, ODNI, and General Clapper on August 18, 2017, and responded to the subpoenas served on DOJ, FBI, and Mr. Comey on August 25, 2017.  *See* Siegel Decl., Ex. 7 (CIA Response); Siegel Decl., Ex. 6 (ODNI Response); Siegel Decl., Ex. 8 (DOJ/FBI Response).

The subpoenas sought ten categories of records from each agency, including documents pertaining to the contents of, communications about, and transmission of the so-called Dossier, as well as any search warrants relying on the so-called Dossier.  *See, e.g.*, Siegel Decl., Ex. 3 (DOJ/FBI Subpoena) at 76-77 (DOJ Request for Records) ¶¶ 1-7; *id.* at 87-88 (FBI Request for Records) ¶¶ 1-7.  In addition, the subpoenas requested records concerning the Plaintiffs in the defamation action – Aleksej Gubarev, XBT Holding S.A., and Webzilla, Inc. – and any investigations into their connections to Russian persons or entities and into any improper cyber activity by those Plaintiffs.  *See, e.g.*, DOJ Request for Records ¶¶ 8-10; FBI Request for Records ¶¶ 8-10.  Separately, the subpoenas also sought testimony on many of the same topics from the Government agencies and officials, as well as testimony concerning the existence and timing of any investigation of the so-called Dossier or the allegations contained therein, and the relationship

---

[2] Service was effectuated for the subpoenas on different dates: ODNI accepted service of its subpoena on July 3 and of General Clapper's on July 6; FBI accepted service of its subpoena on July 14 and of Mr. Comey's on July 20; DOJ accepted service of its subpoena on July 5; and CIA accepted service of its subpoena on June 30 and of Mr. Brennan's on July 6.

between the Government agencies and the alleged author of the so-called Dossier, Christopher Steele. *See, e.g.*, DOJ/FBI Subpoena at 74-75 (DOJ Request for Testimony) ¶¶ 1-8; *id.* at 85-86 (FBI Request for Testimony) ¶¶ 1-8. From Former Director Comey, Buzzfeed sought testimony and records further expounding on comments in his "Senate testimony," conversations with then-President Obama and then-President Elect Trump, and decisions made in his official capacity and with members of the Intelligence Community. *See* DOJ/FBI Subpoena at 98 (Comey Request for Records) ¶¶ 1-5; *id.* at 96-97 (Comey Request for Testimony) ¶¶ 1-10.

Because the Government is not a party to the defamation action for which Buzzfeed sought these records and testimony, the agencies determined that the subpoenas were governed by their respective *Touhy* regulations, according to which the agencies and their employees may not produce such information without prior agency authorization. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *see also, e.g.*, 28 C.F.R. §§ 16.21-16.29 (DOJ *Touhy* regulations). Pursuant to their *Touhy* regulations, all Government Respondents denied the requests. In so doing, the agencies noted that they have never officially confirmed or denied the existence of the so-called Dossier, or any investigation or other government activity related to it. *See, e.g.*, DOJ Response at 2. DOJ and FBI explained that they were denying Buzzfeed's *Touhy* requests because they constitute an undue burden, are unreasonably cumulative and duplicative, would reveal investigatory records compiled for law enforcement purposes, may implicate classified information, may violate the Privacy Act or the National Security Act, are not clearly relevant to Buzzfeed's defenses, and constitute an especially onerous request for oral testimony. *See id.* at 2-4. ODNI advised Buzzfeed that responding to its request would divert resources from the agency's intelligence-gathering mission, reveal privileged or classified information, and could violate the Privacy Act. *See* ODNI Response at 3-5. CIA informed Buzzfeed that its request sought

information never officially acknowledged to be in CIA's possession, and, to the extent that such information existed, it would be properly and currently classified by E.O. 13,526. *See* CIA Response at 2-3.

On September 8, 2017, counsel for Buzzfeed met with undersigned counsel for the Government to discuss Buzzfeed's attempted narrowing of its request to address concerns identified in the Government's responses. At this meeting, Buzzfeed proposed a narrowed version of its original subpoenas. *See* Siegel Decl., Ex. 9 (Narrowed Request for Testimony). The proposed narrowed request sought seven topics of testimony from DOJ, FBI, or Mr. Comey, and two topics of testimony from General Clapper. *Id.* at 1-2. By letter dated September 15, 2017, the Government denied Buzzfeed's narrowed requests for testimony. *See* Siegel Decl., Ex. 10 (Response to Narrowed Subpoenas). The Government explained that even as narrowed, the request for testimony appeared, on its face and assuming *arguendo* the veracity of the representations made therein, to implicate classified information, and/or to require the subpoenaed agencies and government officials to confirm or deny the existence of classified information. *Id.* at 2. Because the agencies' *Touhy* regulations prohibit the authorization of testimony that would reveal classified information, the Government determined that it could not comply with Buzzfeed's narrowed request. *See id* (citing 28 C.F.R. § 16.26(b)(3); 32 C.F.R. § 1703.4(c)(5); Executive Order No. 13,526).

## III. The Motion to Compel

On September 27, 2017, Buzzfeed served undersigned counsel with the present motion to compel and initiated a miscellaneous action in this Court. *See* MTC. In its motion, Buzzfeed requests testimony from one or "no more than two witnesses" from FBI and, if necessary, ODNI,

with specific knowledge on nine enumerated topics.  *Id.* at 12-13.[3]  These topics are:

1) Whether the content of the Dossier was being investigated as of January 10.

2) Whether the Dossier was the subject of a counter-intelligence investigation, or any other form of investigation, as of January 10.

3) Whether DOJ had all the pages of the Dossier that BuzzFeed published as of January 10.

4) That Mr. Comey confirm his written statement to the Senate about his January 6 briefing of President-elect Trump.[4]

5) Whether a summary of the Dossier's contents was included in material provided to President-elect Trump.

6) Whether Mr. Comey participated in briefing President Obama about the Dossier on or about January 6 in his official capacity as the FBI Director.

7) Whether DOJ/FBI received the Dossier from Senator McCain's office on December 9, and whether DOJ/FBI received anything else subsequently from Senator McCain's office or any other representative of Senator McCain.

8) That Brennan, Clapper and Rogers also participated in briefing President Obama about the Dossier on January 6, in their official capacities and provided a written synopsis of the Dossier.

9) That agencies of the US Government were attempting to verify the contents and sourcing of the Dossier prior to January 10, as referenced in Mr. Clapper's May 8 testimony before the Senate Judiciary Committee.

---

[3] There are slight wording differences between the testimony requested by Buzzfeed at its September 8 meeting with the Government and the testimony it now requests in its motion to compel.  *Compare* Siegel Decl., Ex. 9 at 2 (seeking testimony about "[w]hether DOJ/FBI received the Dossier from Senator McCain's office on December 9, and whether you received anything else subsequently") *with* MTC at 12 (seeking testimony about "[w]hether DOJ/FBI received the Dossier from Senator McCain's office on December 9, and whether DOJ/FBI received anything else subsequently from Senator McCain's office or any other representative of Senator McCain").

[4] Buzzfeed presumably is referring here to Mr. Comey's June 7, 2017, written statement, submitted in advance of his testifying before the Senate on June 8.  At the time of the statement and the testimony, Mr. Comey was no longer serving as Director of the FBI, and therefore did not speak on behalf of Respondents DOJ or FBI.

*Id.*  Buzzfeed argues that these nine topics of testimony are relevant for two of the defenses it has raised in the Florida litigation:  Buzzfeed contends, first, that the testimony sought could help it prove that its Article is a fair and accurate report of "records that were a basis of official government actions and thus is protected by a fair report privilege pursuant to state statute, common law and/or the First and Fourteenth Amendments to the Constitution of the United States."  MTC at 14.  Second, Buzzfeed contends that the testimony sought "could also establish that the Article is not false, because it accurately reports that the Dossier has been the subject of official government activity while making clear that the underlying allegations in the Dossier itself had not been verified when it was published."  *Id.* at 14-15.  According to Buzzfeed, the Government should be compelled to produce the witness(es) necessary for the requested testimony allegedly because the requests are narrow, they concern matters "of unusual public importance," and "the discovery sought is tailored to public statements made by the Government Parties,[5] so any claim of classification and/or privilege is unlikely to have merit."  *Id.*

## LEGAL STANDARD

"Federal Rule of Civil Procedure 45 authorizes court-issued subpoenas to obtain discovery from third parties."  *Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007).  Rule 26, which generally governs civil discovery, provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Nevertheless, courts have made clear that such third-party discovery "in particular must . . . be closely regulated."  *Premier Election Solutions, Inc. v. Systest Labs, Inc.*,

---

[5] Although Buzzfeed suggests that it seeks testimony about official statements previously made by the Government Respondents, none of the agency Respondents or officials has officially confirmed or denied possessing or investigating the so-called Dossier.  Because all of the requested topics of testimony are predicated on such confirmation, Buzzfeed is seeking to compel previously undisclosed testimony from the Government.

No. 09-01822, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009).  Indeed, a court's obligation is "particularly acute" when a third-party subpoena is directed toward the United States.  *In re Motion to Compel Compliance with Subpoena Directed to Dep't of Veterans Affairs* (hereinafter "*In re Veterans Affairs*"), 257 F.R.D. 12, 18 (D.D.C. 2009).

With any third-party subpoena issued pursuant to Rule 45, a court must determine "if the materials or testimony sought are relevant to the action."  *Alexander v. FBI*, 186 F.R.D. 21, 43 (D.D.C. 1998).  The party seeking the third-party discovery bears the burden of demonstrating its relevance to the underlying litigation.  *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 9 (D.D.C. 2007).  A party's demonstration of relevance arises out of Rule 26's "general requirement[] that a discovery order be 'for good cause.'"  *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014) (citation omitted); *see also Food Lion v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) ("[N]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." (citation omitted)).  As the Supreme Court has explained, "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where justice requires protection for 'a party or person from annoyance, embarrassment, oppression, or undue burden or expenses.'"  *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (citation omitted).

Courts in this district have "determined that a showing of relevance can be viewed as a showing of need; for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of a matter not relevant to the subject matter involved in the pending action."  *Coleman v. District of Columbia*, 275 F.R.D. 33, 36 (D.D.C. 2011) (citation omitted). This relevance requirement is "not so liberal as to allow a party to roam in shadow zones of

relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *St. John v. Napolitano*, No. 10-216, 2011 WL 1193009, at *16 (D.D.C. Mar. 31, 2011) (citation omitted). Courts in this district, therefore, have suggested that there is a "crucial distinction" between permitting discovery to "flesh out a pattern of facts already known" and, as here, "the illegitimacy of permitting discovery against a third party premised on an unfounded suspicion." *In re Veterans Affairs*, 257 F.R.D. at 17 (citing *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990)).

In addition to the requirement that the party issuing the subpoena establish the relevance of the discovery sought, "discovery under Rules 26 and 45 must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'" *Watts*, 482 F.3d at 509 (quoting *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)). For this reason, Rule 26 instructs courts to consider a number of factors in determining whether the subpoena imposes an undue burden on a government agency or employee, including whether the subpoena is "unreasonably cumulative or duplicative"; whether the testimony or records sought can be "obtained from some other source that is more convenient, less burdensome, or less expensive"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit," "taking into account the needs of the case, the amount in controversy, . . . the parties' resources, . . . the importance of the issues at stake in the litigation," and "the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1)-(2) (2015 Amendment). As the D.C. Circuit has instructed, "[w]ith these tools, district courts in cases involving third-party subpoenas to government agencies or employees can adequately protect . . . the 'government's interest in not being used as a speakers' bureau for private litigants.'"

*Watts*, 482 F.3d at 509 (quoting *Exxon Shipping*, 34 F.3d at 780); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").

In addition to these enumerated limitations on discovery, Rule 45 also "requires that district courts quash subpoenas that call for privileged matter." *Watts*, 482 F.3d at 508; Fed. R. Civ. P. 45(d)(3)(A)(iii); Fed. R. Civ. P. 26(b)(5).  To sustain a claim of privilege, the D.C. Circuit requires a formal assertion of the privilege by an official who has control over and has personally considered the privileged information; that official must provide the court with a specification of the information for which the privilege is claimed and an explanation of why it falls within the scope of the privilege. *Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996).  The requesting party can overcome a proper claim of privilege by demonstrating its "'need' for subpoenaed documents[, which] is determined by weighing numerous factors." *Id.*  Then, "the District Court [i]s required to weigh '[t]he public interest in nondisclosure against the [requester's] need for access to the privileged information.'" *Id.* (citing *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988)).

## ARGUMENT

Buzzfeed contends that the topics of testimony sought from the Government are relevant to two affirmative defenses it has raised in the Florida litigation: the fair report privilege and the substantial truth of the Article.  However, because both defensive theories, as described in Buzzfeed's motion, rely on an inaccurate characterization of the Article, Buzzfeed cannot establish that the testimony sought is relevant to the Florida litigation.  Further, even if the Article did contain the kind of reporting Buzzfeed claims, it fails to demonstrate that a third-party government subpoena intended to fish for information "premised on an unfounded suspicion" of official government activity, in support of a post-hoc justification for an allegedly defamatory publication,

is permitted by the rules governing civil discovery.  *In re Veterans Affairs*, 257 F.R.D. at 17; *see also* Fed. R. Civ. P. 45, 26.

Nor is Buzzfeed correct that the subpoena does not pose an undue burden on the Government.  Because the topics of testimony sought would require the Government Respondents to disclose previously nonpublic, sensitive information; could result in a deluge of requests for testimony in similar cases; would detract from Respondents' ability to fulfill their official obligations; and would not advance litigation that serves the public interest, Buzzfeed's subpoena is unduly burdensome.

Finally, all of the enumerated topics of testimony sought are protected by the law enforcement investigatory privilege: To the extent that such testimony could be provided, the information would have been compiled for law enforcement purposes by a law enforcement agency for law enforcement purposes, and disclosure of the information sought, to the extent it exists, would interfere with an ongoing law enforcement investigation.  For any of these reasons, the Court should deny Buzzfeed's motion to compel.

**I.   The Testimony Sought is Not Relevant to the Florida Litigation**

Buzzfeed argues that the testimony sought via the motion to compel is "highly relevant" to the Florida litigation for two reasons:  First, Buzzfeed asserts that its Article is a fair and accurate report of "records that were a basis of official government actions and thus is protected by a fair report privilege pursuant to state statute, common law and/or the First and Fourteenth Amendments to the Constitution of the United States."  MTC at 14.  Second, Buzzfeed contends that the testimony sought "could also establish that the Article is not false, because it accurately reports that the Dossier has been the subject of official government activity while making clear that the underlying allegations in the Dossier itself had not been verified when it was published."

*Id.* at 14-15.

The fair report privilege "is a recognized exception to the common law rule that the republisher of a defamation is deemed to have adopted the underlying defamatory statements as its own." *White v. Fraternal Order of Police*, 909 F.2d 512, 527 (D.C. Cir. 1990). "The privilege extends to 'the report of any official proceeding, or any action taken by any officers or agency of the government of the United States'" in their official capacities "and will protect an article when it is 'apparent either from specific attribution or from the overall context that the article is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings,' and the article is a 'fair and accurate' account of the document or proceeding." *OAO Alfa Bank v. Center for Public Integrity*, 387 F. Supp. 2d 20, 40 (D.D.C. 2005) (quoting RESTATEMENT (SECOND) OF TORTS § 611 cmt. d (1977) and *Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985)); *see also, e.g.*, *Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So. 2d 972, 976-77 (Fla. Dist. Ct. App. 1987) ("The privilege to report on official proceedings exists so that the public may be kept informed of the workings of government.  That purpose is served, notwithstanding any inaccuracy of the information, when the information brought out in official proceedings is reported."); *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1338 (S.D. Fla. 1998) ("The fair reporting privilege is extended to news media 'to accurately report on the information they receive from government officials,' protecting the reporting media if that information is inaccurate." (citation omitted)).[6]

---

[6] Buzzfeed contends that the choice of law that will ultimately govern the defamation claim in the Florida litigation remains an unresolved issue: New York, D.C., Florida, and Texas all have been referenced in Buzzfeed's filings.  *See* MTC at 15.  Ultimately, however, the choice of law governing the defamation claim in the Florida litigation is irrelevant, as there is no jurisdiction in which the Article constitutes a report of official proceedings, such that it could be substantially true or protected by the fair report privilege.

Here, because Buzzfeed's assertion of the fair report privilege and its substantial truth defense rely on a mischaracterization of the Article, Buzzfeed cannot avail itself of that privilege or defense.  To substantiate the claimed relevance of the requested testimony, Buzzfeed must establish that the Article is a report on an official government proceeding about the so-called Dossier, or a report on other official government activity concerning the so-called Dossier, rather than as expressly stated in the Article, a publication of "explosive – but unverified – allegations" of "compromising information on Trump," "so that *Americans can make up their own minds about [those] allegations*."  Article at 1-2 (emphasis added).  "[I]t is . . . incumbent on the party asserting the [fair report] privilege to establish that the statements at issue reported on a[n . . . official] proceeding," and Buzzfeed cannot carry that burden here.  *Chowolsky v. Civiletti*, 69 A.D.3d 110, 114 (N.Y. 2009).  Even a cursory review of the Article – which consists of less than 500 words of text and an embedded 35-page document – reveals that it does not actually "report[] that the Dossier has been the subject of official government activity."  MTC at 15.

Because Buzzfeed's characterization of the Article as a report on official government activity is at best a post-hoc rationalization proffered to avoid liability in private litigation, neither the substantial truth nor fair report theory of relevance holds water.  As another court in this district has explained, the relevance requirement in civil discovery does not "allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."  *St. John*, 2011 WL 1193009, at *16 (citation omitted).  Since Buzzfeed cannot rely on these defenses to satisfy the "showing of need" required by Federal Rule of Civil Procedure 26, this Court should not compel testimony from non-party Government agencies purportedly to substantiate those defenses.  *Coleman*, 275 F.R.D. at 36.

14

**a.   The Article admits that it is not a report on official government proceedings.**

In its second paragraph, the Article declares that "BuzzFeed News is publishing the full document" – the so-called Dossier – "so that Americans can make up their own minds about allegations about the president-elect that have circulated at the highest levels of the U.S. government."  Article at 2.  The Article thus plainly announces its own purpose: to allow readers of its website to view and consider a document that Buzzfeed does not claim is a government-generated report or report of a government proceeding.  The Article holds itself out as affording the public the opportunity to judge for itself whether the allegations in that non-governmental document were accurate; neither the Article's opening proclamation about its intention, nor the text that follows it, suggests that it is an objective report of any official government activity.  Even in its motion, Buzzfeed laments that the Florida lawsuit seeks to impose "liability for [Buzzfeed] being the first news organization to provide the public with direct access to the Dossier," MTC at 21– not for reporting on a government investigation into, or other official activity around, the so-called Dossier.  The actual purpose of the Article, then, is manifestly at odds with "[t]he premise of the privilege[, which] is the interest of the public in obtaining information about what occurs in official proceedings and public meetings."  *Von Kahl v. Bureau of National Affairs, Inc.*, 810 F. Supp. 2d 138, 144 (D.D.C. 2011) (quoting *White,* 909 F.2d at 527).  The Article thus is not protected by the fair report privilege, which is "only available to the media when their news reports are presented in such a manner that the average reader would be likely to understand the communication to be a report on – or summary of – an official document or proceeding."  *Id.*

Indeed, courts routinely invoke the principle behind the fair report privilege – *viz.*, "the interest of the public in having information made available to it as to what occurs in official proceedings and public meetings" – in determining whether it protects a particular publication.

*Bufalino v. Associated Press*, 692 F.2d 266, 271 (2d Cir. 1982) (citation omitted).  In *Bufalino*, the Second Circuit held that the fair report privilege was inapplicable to an article that did not achieve the ends of the privilege because "[the article] does nothing to encourage the initial reporting of public records and proceedings." *Id.*  Further, the court noted that the publisher of the article was not entitled to assert that privilege on the "basis of records upon which it did not actually rely" for its report, because the fair report privilege "should not be interpreted to protect unattributed, defamatory statements supported after-the-fact through a frantic search of official records." *Id.* Thus, where a journalist finds herself on the wrong side of a defamation lawsuit, she cannot transform an article intended to be about something else into a report on government proceedings simply to shield herself from liability.  *Accord Dameron*, 779 F.2d at 739 ("[T]he intended beneficiary of the privilege is the public, not the press.  The privilege is not simply a convenient means for shielding the media from tort liability.").  Because the Article's intention was to share "explosive—but unverified—allegations" with the public, not to report on official government proceedings, Buzzfeed cannot invoke the fair report privilege to justify its publication of allegedly defamatory statements (nor commandeer the resources of the Federal Government in furtherance of that effort).  *See* Article at 1.

**b.  The Article does not report on any official government proceeding.**

Apart from the Article's unequivocal statement of its own *raison d'être*, the remainder of its text also belies the suggestion that the article is a "report of any official proceeding" of the Government.  *OAO Alfa Bank*, 387 F. Supp. 2d at 40.  There is no specific official proceeding identified, let alone reported on, in the Article, nor is there is any "official government activity" described in its text.  In other words, even accepting Buzzfeed's contention that all of the topics on which it seeks to compel government testimony are intended to establish the existence of a

government investigation into the so-called Dossier, *the Article never reported on such an investigation*.   Buzzfeed's assertion that the Article reports about "an agency investigation, briefings of the President and President-elect, and conduct by at least two United States Senators," MTC at 15-16, is simply false.

Indeed, the only reference to the Government or any member thereof is the passing mention that the so-called Dossier has been "circulating among elected officials, intelligence agents, and journalists for weeks" and has "circulated for months and acquired a kind of legendary status among journalists, lawmakers, and intelligence officials who have seen" the so-called Dossier. Article at 2.  In addition, in its final sentence, the Article notes that CNN previously had reported "that Arizona Republican John McCain gave a 'full copy' of the memos to Comey on Dec. 9, but that the FBI already had copies of many of the memos."[7]  *Id.*  In short, the sole aspect of the Article that pertains to the Government is its reporting that unspecified intelligence "agents" and "officials" "have seen" or "have circulated" a non-governmental document, and its mention that another news outlet reported that a government agency "had copies of many of the memos."  *Id.*

This purportedly official conduct is a far cry from news reports that "concern[] activities which are within the prescribed duties of a public body.  The test is whether the report concerns action taken by a person officially empowered to do so."  *Freeze Right Refrigeration and Air Conditioning Services, Inc. v. City of New York*, 101 A.D.2d 175, 182 (N.Y. 1st Dept. 1984) (citation omitted) (quoted in MTC at 15).  Buzzfeed has not identified any authority standing for the proposition that circulating or simply viewing a document constitutes an official government

---

[7] The Article never establishes that the referenced "full copy" of the memos is the so-called Dossier embedded in the Article, or that the "many . . . memos" the FBI allegedly "already had" are the so-called Dossier.  Thus, not even the passing references to government officials in the Article substantiate the invocation of the fair report privilege.

activity. *Compare Biro v. Conde Nast*, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (holding that report of judicial proceeding was protected by the fair report privilege, as codified in New York Civil Rights Law § 74); *Steven H. v. Duval Cty. Sch. Bd.*, No. 99-500-CIV-J-20C, 1999 WL 1427666, at *1 (M.D. Fla. Sept. 3, 1999) (holding that defamatory statement in article based on information obtained from public school teacher fell within Florida law's "qualified privilege to republish statements of reports of government officials"); *see also Wenz v. Becker*, 948 F. Supp. 319, 323 (S.D.N.Y. 1996) ("If the context in which the statements are made make[s] it impossible for the ordinary viewer to determine whether defendant was reporting [on an official proceeding], the absolute statutory privilege does not attach." (citation omitted)). And while Buzzfeed seems to imply that news reports published by other outlets that are hyperlinked to the Article expand the scope of the Article's contents, it points to no authority suggesting that a publisher may defend against a defamation action by relying on the contents of stories published by other organizations that its article merely references or links.

Moreover, the authority on which Buzzfeed relies reveals a further defect in its fair-report and substantial-truth defenses: the lack of attribution to an official government source or report. Buzzfeed cites a libel suit in this district that arose out of an article describing a Russian intelligence agency's report on organized crime, *OAO Alfa Bank v. Center for Public Integrity*. The court there ruled that the "ordinary prerequisites to [the] application of the fair reporting privilege [were] met" – namely, that the Russian report is an official government document; that the article published by defendants "paraphrases or draws upon" the report; and that the article is a substantially accurate account of that official Russian report. *OAO Alfa Bank*, 387 F. Supp. 2d at 41. Nevertheless, the court held that the privilege did not shield defendants from defamation

liability because that privilege does not apply to reports on the actions or reports of foreign governments.  *Id.*

*OAO Alfa Bank*, however, does not support the result Buzzfeed urges here.  First, the "report" in Buzzfeed's Article is not a government document, but a "collection of memos" allegedly compiled by "a person who is understood to be a former British intelligence agent." Article at 2.  Second, to the extent that any government activity is discussed at all in the Article, it is the assertion that this private report was "circulating among" unnamed government officials and that some such officials have "seen" the report.  *Id.*  The Article never attributes its account of this purportedly official government activity to any official document or statement by any government official.  Thus neither of the first two prerequisites are met – either that there is or was an official document or proceeding underlying the account of government activity reported in the article, or that the article "paraphrase[d] or dr[e]w[] from" such a document or proceeding.  *OAO Alfa Bank*, 387 F. Supp. 2d at 41.  It follows, then, that the third prerequisite also cannot be met in this case; no court could assess the "substantial[] accurac[y]" of the Article against a government document or proceeding not actually reported on therein.  *Id.*  Even if the Government's testimony might supply official support for the account of the possession and/or "circulation" of the so-called Dossier by government officials, such post-hoc attribution does not satisfy the criteria for application of the fair report privilege.[8]  *See Dameron*, 779 F.2d at 739  (holding that fair report privilege is unavailable where it is not "apparent either from specific attribution or from the overall

---

[8] In any event, in *OAO Alfa Bank*, the primary evidence relied on in establishing the fair-report defense was the deposition of the author of the article, who testified about how he learned of, and ultimately acquired, the Russian report in that case.  *OAO Alfa Bank*, 387 F. Supp. 2d at 31.  Buzzfeed presumably also could rely on that sort of testimony here—rather than involve non-party Federal Government agencies.

context that the article is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings").

In short, even putting aside Buzzfeed's convenient disavowal in these proceedings of the Article's stated purpose, the Article bears none of the hallmarks of a report protected by the fair report privilege:  There is no official government activity identified or described in the article, and no attribution of any information to a government source or report.  Accordingly, Buzzfeed's invocation of that privilege does not justify compelling the testimony requested here.

### c. To the extent that any government activity is referenced in the Article, it does not encompass the allegedly defamatory statements.

Even accepting that the Article references some official government activity – and Respondents maintain that it does not – any such activity clearly does not encompass the allegedly defamatory statements at issue in the Florida litigation.  It is well settled across jurisdictions that "a report's mere mention of an official proceeding does not automatically extend the [fair report] privilege to an entire publication." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 217 (N.D.N.Y. 2014); *see also Corp. Training Unlimited, Inc. v. Nat'l Broad. Co. Inc.*, 868 F. Supp. 501, 509 (E.D.N.Y. 1994) (holding that, despite some discussion of official proceedings during a television story, "[t]he ordinary viewer . . . would not have been under the impression that he was being presented with a report of the . . . [official] proceedings," so privilege did not apply to the whole story).

Plaintiffs in the Florida litigation rest their defamation claim on a single paragraph in the final page of the 35-page document embedded in the Article.[9]  *See* Siegel Decl. Ex. 4 at 1

---

[9] The allegedly defamatory action out of which the Florida litigation arises is a statement that "[redacted] reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic Party leadership.  Entities linked to one Alexei GUBAROV [sic] were involved and he and another hacking expert, both

(Declaration of Katherine Bolger) ¶ 2 ("Plaintiffs assert that they were identified in two sentences in the penultimate paragraph of the Dossier as having been involved in Russian efforts to hack Democratic political operatives.").  The allegedly defamatory statements are not contained within a government document or statement of a government official, and Buzzfeed does not argue otherwise.  Nor does the Article report that a government official or agency ever specifically investigated or took any official government action related to the allegedly defamatory sentences on the final page of the so-called Dossier.  Accordingly, even if this Court finds that the circulation or viewing of the so-called Dossier by elected officials or "intelligence agents" constitutes an official government activity within the meaning of the fair report privilege, its protections do not encompass the entirety of the Article—and it certainly does not encompass the allegedly defamatory statements at issue in the Florida litigation.

The distinction between an article that mentions an official government proceeding and an article that constitutes a report on that proceeding is underscored by *Fine v. ESPN*, a case Buzzfeed discusses at length in its motion.  *See* MTC at 17.  In *Fine*, a sports news organization aired a report of a police investigation into a football coach's allegedly abusive behavior, premised on an audiotaped accusation submitted to the police and a search warrant application.  The district court found that it could not conclude that New York's statutory fair report privilege protected the full ESPN report, because even if some portions of the story "likely constitute" reports of a police investigation, none were "reports of investigative conclusions regarding the Tape."  *Fine*, 11 F. Supp. 3d at 218.  The court noted that in identifying an "official proceeding" for purposes of the statute, "[t]he test is whether the report concerns actions taken by a person officially empowered

recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation."  Florida Complaint ¶ 26.

to do so." *Id.* at 214-15 (citation omitted).  Further, the *Fine* court explained that the New York fair report statute "applies only where the challenged report is 'of' a proceeding . . . .  An overlap between the subject matter of the report and the subject matter of a proceeding does not suffice; the ordinary viewer or reader must be able to determine from the publication itself that the publication is reporting on the proceeding."  *Id.* at 216 (collecting cases).  Though no precise test exists for determining whether a report is "on" a proceeding, the court explained that "[i]f context indicates that a challenged portion of a publication focuses exclusively on underlying events, rather than an official proceeding relating to those events, that portion is insufficiently connected to the proceeding to constitute a report of that proceeding."  *Id.* at 217.

Applying these criteria to Buzzfeed's Article confirms that it does not constitute a "report of" an official proceeding – even if the fact that government officials "circulated" or "saw" the so-called Dossier constitutes government activity.  The allegedly defamatory statements on which the Florida litigation is based appear in the penultimate paragraph of the so-called Dossier, and the Article is silent as to any official activity about those statements.  As such, it is not protected by the fair report privilege and is not a substantially true report on government activity.

The D.C. Circuit has explained that "no one would suggest that discovery should be allowed of information that has no conceivable bearing on the case."  *Food Lion*, 103 F.3d at 1012.  Here, because both the stated intent and content of the Article belie the applicability of the fair report privilege to that publication and its allegedly defamatory statements, the Government Respondents should not be compelled to testify about government activity that was plainly not reported on in the Article.   Accordingly, this Court should deny Buzzfeed's request for clearly irrelevant testimony, which does not meet the "for good cause" threshold of civil discovery.  *AF Holdings*, 752 F.3d at 995.

## II.     The Testimony Sought Would Impose an Undue Burden on the Government

The Court alternatively should deny Buzzfeed's motion on the independent ground that compelling the testimony sought would impose an undue burden on the Government.  A court may deem a subpoena unduly burdensome if it is "unreasonably cumulative or duplicative"; if testimony sought can be "obtained from some other source that is more convenient, less burdensome, or less expensive"; or if "the burden or expense of the proposed discovery outweighs its likely benefit," "taking into account the needs of the case, the amount in controversy, . . . the parties' resources, . . . the importance of the issues at stake in the litigation," and "the importance of the proposed discovery in resolving the issues."   Fed. R. Civ. P. 26(b)(1)-(2) (2015 Amendment).  Here, these factors militate in favor of denying Buzzfeed's motion to compel.

### a.  Buzzfeed's subpoena is unreasonably cumulative.

The Government previously denied Buzzfeed's original, far-reaching subpoenas, which included broad requests for records and testimony on overlapping issues from seven government entities, in part because the seven subpoenas were unreasonably duplicative and cumulative.  *See, e.g.*, DOJ Response at 2-3.  Buzzfeed argues that its subpoena is not unreasonably duplicative or cumulative in its narrowed form, and that it therefore no longer imposes an "undue burden" on the Defendant agencies.  *See* MTC at 18.  But the request for testimony in the motion to compel remains unreasonably cumulative.[10]

First, Rule 26 entitles subpoenaed Government agencies to "consider the cumulative effect

---

[10] The topics of testimony sought are also redundant.  *See, e.g.*, MTC at 12, ¶ 1 (requesting testimony on "[w]hether the content of the Dossier was being investigated as of January 10"); *id.* ¶ 2 (requesting testimony on "whether the Dossier was the subject of a counter-intelligence investigation or any other form of investigation as of January 10"); *id.* at 13, ¶ 9 (requesting testimony showing "[t]hat agencies of the US Government were attempting to verify the contents and sourcing of the Dossier prior to January 10").

of the request [for testimony] with all other actual and potential requests." *Town of Sw. Ranches v. U.S. Dep't of Homeland Sec., Immigration & Customs Enf't*, No. 15-CV-21924, 2016 WL 4264049, at *8 (S.D. Fla. Aug. 12, 2016).  Even where a requester seeks "a single deposition," an agency may "validly consider[] that a grant of a deposition in this case could lead to future burdens on Department resources."  *See id.*  Because of the proliferation of lawsuits concerning or tangentially related to "one of the most important political stories of our day[,] Russia's efforts to interfere with the 2016 United States presidential election," MTC at 1, and the "enormous public interest in both the contents and existence of the Dossier," *id.* at 21, the Government Respondents could be subjected to similar requests for testimony in the future, and the burden of complying with all such requests would be significant.  *See Davis Enterprises v. EPA*, 877 F.2d 1181, 1187 (3d Cir. 1981) (noting, where agency denied request for single deposition, that requester's "argument about the minimal burden in this case fails to take into account the EPA's legitimate concern with the potential cumulative effect of granting such requests.  EPA argues that private litigation follows each environmental issue [and is] . . . concern[ed] about the effects of proliferation of testimony by its employees").  Buzzfeed's admission that "literally hundreds" of articles have been written about the so-called Dossier suggests that there could be similar requests made of the Federal Government in actions like the Florida litigation; indeed, at least one other defamation action arising in connection with the so-called Dossier recently was filed in this district. *See Fridman v. Bean LLC a/k/a Fusion GPS*, No. 17-cv-2041 (D.D.C. Oct. 3, 2017) (defamation action brought by three individuals not involved in the Florida litigation against firm alleged to have published the Dossier).

Second, while Buzzfeed identifies the fair report privilege and the substantial truth defense as the only issues for which the Government Respondents' testimony is sought in this matter, the

topics of testimony requested extend far beyond what Buzzfeed published in its Article and therefore beyond the defenses for which the testimony is allegedly sought.  For instance, although Buzzfeed requests testimony establishing "[t]hat Brennan, Clapper and Rogers also participated in briefing President Obama about the Dossier on January 6, in their official capacities and provided a written synopsis of the Dossier," the Article does not mention Brennan, Clapper, or Rogers, nor does it discuss any briefing by them of President Obama, or any event taking place on January 6 whatsoever.  MTC at 13, ¶ 8; Article at 1-3.  Testimony as to these subjects do not corroborate anything reported in the Article, and therefore would have no bearing on any of Buzzfeed's defenses to the defamation action.  Similarly, while the Article mentions in passing that *CNN reported* that Senator "John McCain gave a 'full copy' of the memos to Comey on Dec. 9," *see* Article at 2 (emphasis added), the motion seeks to compel testimony about whether "Senator McCain's office or any other representative of Senator McCain" produced any other material to the Department.  MTC at 13, ¶ 7.

Thus the testimony requested clearly is not confined only to Buzzfeed's improper assertion of the fair report and substantial truth defenses and, in any event, could lead to wave of similar requests for testimony, rendering the motion to compel unreasonably cumulative.  *See* Fed. R. Civ. P. 26(b)(1)-(2) (in assessing whether discovery imposes an undue burden, courts could consider "importance of the proposed discovery in resolving the issues" and whether discovery is "proportional to the needs of the case" in determining whether the burden of the discovery "outweighs its likely benefit," and courts must limit discovery where "the discovery sought is unreasonably cumulative or duplicative").

   **b. Buzzfeed's subpoena seeks information not previously disclosed by Government Respondents.**

Buzzfeed erroneously contends that the requested testimony concerns topics that "the Government Parties have already repeatedly discussed in public fora" and therefore compelling such testimony would not be burdensome to the Government.[11]  MTC at 19-20.  Buzzfeed never specifically identifies when and in what manner the Government Respondents "discussed in public fora" each of the nine requested topics of testimony.   Rather, Buzzfeed purports to bolster that claim with the voluminous quantity of news articles and web postings appended to its motion on matters associated, to varying degrees, with the Article.   Buzzfeed's motion also includes a plethora of factual allegations about "official briefings" and "official investigations," most of which post-date the publication of the Article. *See id.* at 4-9.

However, the vast majority of these allegations do not constitute official statements.  Only statements made by acting government officials or representatives can be attributed to "the Government Parties," meaning that statements made by elected officials or former agency officials cannot be attributed to the Respondents.  *See Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (explaining, in the FOIA context, that officially acknowledged information "must already have been made public through an official and documented disclosure," and noting that "in the arena of intelligence and foreign relations there can be a critical difference between official and unofficial disclosures"); *see also Bartko v. Dep't of Justice*, 62 F. Supp. 3d 134, 143-44 (D.D.C.

---

[11] Here, Buzzfeed misunderstands the Government's "attempted 'Glomar' response." *See* MTC at 22.  The Government does not contend that the fact that it has never previously confirmed or denied the existence of testimony on the topics Buzzfeed requests in its motion is, standing alone, a reason to quash Buzzfeed's subpoenas.  Rather, the fact that compliance with the subpoenas could reveal previously undisclosed details about an ongoing law enforcement investigation – and thereby could interfere with that investigation – goes to the substantial burden that would be imposed on the Government Respondents, should the Court compel compliance with the subpoena.

2014) (distinguishing public discussion, including "in the popular press," and "a statement to the media *made by a person authorized to speak for the agency*" when the statement was made, and concluding that only the latter is an official acknowledgement (emphasis in original)).

Most of the purportedly "official" statements identified in Buzzfeed's motion are not, in fact, official statements by the Government agencies subpoenaed in this action.  For instance, statements by Senators – including Harry Reid and John McCain – do not constitute official statements made by the Government Respondents in this action.  *See, e.g.*, Siegel Decl., Ex. 18. Similarly, statements made by General Clapper and Mr. Comey after they left government service are not binding on the Government Respondents.  *See, e.g.*, Siegel Decl., Ex. 47 (statement from General Clapper on June 7, 2017, when he was no longer Director of National Intelligence); Siegel Decl., Ex. 41 (congressional testimony from General Clapper on May 8, 2017, when he was no longer Director of National Intelligence); Siegel Decl., Ex. 48 (statement from Mr. Comey released on June 7, 2017, when he was no longer Director of the FBI); Siegel Decl., Ex. 49 (congressional testimony from Mr. Comey on June 8, 2017, when he was no longer Director of the FBI); *see also* Siegel Decl., Ex. 45 (congressional testimony of former CIA Director John Brennan on May 23, 2017, after he was no longer CIA director).  The same is true of statements made by President-elect Trump prior to his inauguration, at which time he did not speak on behalf of the Government Respondents.  *See, e.g.*, Siegel Decl., Ex. 20. [12]

---

[12] The only official statement identified in Buzzfeed's motion from Respondents ODNI and General Clapper is a press release issued by then-DNI Clapper on January 11, 2017.  *See* Siegel Decl., Ex. 21.  In that statement, then-DNI Clapper discussed a "private security company document," while "emphasiz[ing] that this document is not a U.S. Intelligence Community product" and that the intelligence community had "not made any judgment that the information in this document is reliable."  Siegel Decl., Ex. 21 (Clapper Statement).  Additionally, as Buzzfeed itself concedes, every time Mr. Comey was asked about something called a "dossier" during the June 8 congressional hearing, Mr. Comey indicated that he could not discuss the issue in an open setting.  *See, e.g.*, Ex. 49 at 12-13; MTC at 24.

Moreover, Buzzfeed simply assumes that whenever any public figure – current or former agency official and members of the media – uses the word "dossier," describes "compromising allegations" against President Trump, or refers to a "private security document," they are discussing the same 35-page document that Buzzfeed embedded in its Article.  MTC at 23.  None of Buzzfeed's sixty-nine exhibits to its motion to compel establishes that identicalness.  Clearly, as to the Government Respondents, there are no public statements to that effect.

In any event, public discussion about a topic does not diminish the burden that providing official testimony on that topic imposes on Government officials, and Buzzfeed's proffer of extraneous articles and information in order to provide sympathetic context for the publication of its Article are therefore beside the point.  For the Government, it is not only the time and expense of a providing testimony that is burdensome; in this regard, Buzzfeed frames the "undue burden" inquiry too narrowly.  Where the release of the requested testimony or records would cause a "threat to the integrity" of a government program, courts have found that the Rule 45 subpoena may constitute an undue burden—even if the records or testimony sought are limited in number or scope.  *See In re: Micron Technology, Inc. Sec. Litig.*, 264 F.R.D. 7, 10 (D.D.C. 2010).  Other considerations of subpoenaed government parties include possible disclosure of classified or law enforcement sensitive information, repercussions of disclosure on other government activities, equities of other government agencies that may be implicated by the testimony sought, and the like.  Thus, notwithstanding the myriad unofficial statements and speculation in the public sphere, the burden that official testimony from intelligence agencies and officials would pose here is substantial.

One case prominently featured in Buzzfeed's motion, *see* MTC at 16-17, highlights the distinction between using in defense of private litigation information the Government previously

has disclosed and the situation here, where a private litigant seeks to compel, via a third-party

subpoena, non-public government information that may or may not exist in the form sought.  In

*Global Relief Foundation, Inc. v. N.Y. Times Co.*, No. 1:01-cv-08821 (N.D. Ill.), a variety of news

outlets reported that various charities were being investigated by federal law enforcement

authorities for providing material support to terrorist organizations.  The district court granted

defendants summary judgment, holding that they need only establish that the "gist" or "sting" of

their articles was true; that the "gist" of the articles in that case was that the government was

investigating the charities; and that affidavits filed by the government in a related case, which the

court could consider on summary judgment, established the veracity of that "gist."  *See Global

Relief Found., Inc.*, No. 1:01-cv-08821, ECF No. 137 (N.D. Ill. Feb. 19, 2003), *aff'd* 390 F.3d 973

(7th Cir. 2004); *see also Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748 (7th Cir. 2002) (related

case).  Buzzfeed contends that the defendants there "did not need to subpoena any agencies,

because they were able to utilize affidavits that had been filed by the government on the public

docket of other litigation that was pending between the plaintiff charity and the government at the

same time."  MTC at 16.

By contrast, Buzzfeed here asks the Court to compel the Federal Government to offer

testimony in the first instance, despite a lack of "similarly specific, publicly-available testimony"

on those topics, *see* MTC at 16; in other words, Buzzfeed seeks to use discovery to confirm facts

that it concedes the Government has not publicly confirmed.  This is a far cry from *Global Relief

Foundation*, which supports the uncontroversial notion that, on summary judgment, parties may

rely on affidavits filed on the public dockets of other litigation, if such affidavits are relevant and

otherwise admissible.  It does not, however, stand for the entirely distinct proposition that, absent

such affidavits, a non-party subpoena of a government agency is an appropriate means of acquiring

such testimony—nor does the latter follow from the former.  In this case, Buzzfeed attempts to force the Government to provide testimony for private litigation to which it is not a party and on subjects which the Government has not previously disclosed.   Neither *Global Relief Foundation* nor Rules 45 and 26 support that result.

### c.   Buzzfeed's subpoena does not serve the public interest.

Buzzfeed misunderstands the nature of the "public interest" consideration in Federal Rule of Civil Procedure 26 in suggesting that the public interest favors compelling the requested testimony.  That rule asks not whether the testimony sought pertains to matters of public interest, but whether "the importance of the issues at stake in the litigation" justifies the burden imposed on the Government Respondents here.  *Watts*, 482 F.3d at 509.  Buzzfeed contends that "the Dossier lies at the core of the public controversy regarding Russian interference in the presidential election and alleged collusion with the Trump Campaign."  MTC at 20.  A general public interest in "the Dossier," however, is distinct from the "importance of the *issues at stake*" in the Florida litigation, and therefore is not germane to the determination of whether the subpoena here imposes an undue burden on the Government.  *Id.* (emphasis added).  The relevant question is whether there is a public interest in a website's defense against a defamation action arising out of the publication of two unverified sentences about a Russian individual and his company—the only "issue[] at stake" in the Florida litigation.  *Id.*  Such an issue is solely a private interest of the parties to that particular defamation case.  *See Peskoff v. Faber*, 244 F.R.D. 54, 59 (D.D.C. 2007) (explaining, in the context of Rule 26, that "[t]his is a commercial dispute and therefore the public interest involved is in the court providing the parties, like all other litigants, with a fair and efficient resolution of their controversy").

While "there is a generalized public interest in having public employees cooperate in the truth seeking process by providing testimony useful in litigation, there also exists a strong public interest in maximizing the use of limited government resources" to perform activities that further the mission and responsibilities of government agencies. *Bobreski v. U.S. EPA*, 284 F. Supp. 2d 67, 80 (D.D.C. 2003) (citation omitted); *see also Moore v. Armour Pharm. Co.,* 129 F.R.D. 551, 556 (N.D. Ga. 1990) (upholding a refusal by the Centers for Disease Control to permit testimony by two HIV researchers, given the importance of their work). Here, the public interest in allowing government officials to attend to their official responsibilities is especially acute, where the government officials who would have knowledge of the topics of testimony requested, to the extent that any such officials exist, would be involved in ongoing intelligence and law-enforcement activities. Further, the testimony sought does not concern previously acknowledged Government activity, nor does it concern any litigation or matter in which the Government has any interest. *See Watts*, 482 F.3d at 509 ("[D]iscovery under Rules 26 and 45 must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'") (quoting *Exxon Shipping*, 34 F.3d at 779). Here, the public is not served by an order compelling non-party law enforcement and intelligence agencies to disclose non-public, irrelevant information.

## III.    The Testimony Sought is Protected by the Law Enforcement Investigatory Privilege

All of the topics of testimony sought involve information protected by the law enforcement investigatory privilege, which provides the Court with a separate and independent basis for denying Buzzfeed's motion to compel. *See* Fed. R. Civ. P. 45(d)(3)(iii). That is, even if the Court finds that the requested testimony is relevant to the Florida litigation and not unduly burdensome

31

to the Government Respondents, it should nevertheless deny Buzzfeed's motion to compel, as it seeks privileged information.[13]

"The federal law enforcement privilege is a qualified privilege that allows for the nondisclosure 'of information that would be contrary to the public interest in the effective functioning of law enforcement.'" *A.N.S.W.E.R. Coalition v. Jewell*, 292 F.R.D. 44, 50 (D.D.C. 2013) (quoting *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998)).   "The privilege serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations." *Tuite*, 181 F.R.D. at 176-77, *aff'd Tuite v. Henry,* 203 F.3d 53 (D.C. Cir. 1999)  "The law enforcement privilege serves the societal interest in the prompt and fair investigation of improper behavior by protecting sources of information, encouraging them to come forward, and preventing the premature disclosure of information . . . ." *McPeek v. Ashcroft*, 202 F.R.D. 332, 336 (D.D.C. 2001).

---

[13] The Government has submitted an *ex parte*, *in camera* declaration in support of this argument ("FBI Decl.").  *See* Notice of Lodging of *Ex Parte*, *In Camera* Declaration (filed concurrently herewith).  Courts routinely rely on *ex parte*, *in camera* materials when determining whether a privilege has been properly asserted and bars disclosure. *See, e.g., Alexander v. FBI*, 186 F.R.D. 154, 169 (D.D.C. 1999) (explaining that *in camera*, *ex parte* hearing was required to determine whether law enforcement investigatory privilege applied); *see also Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462, 1469 (D.C. Cir. 1983) ("[T]he receipt of *in camera* affidavits . . . when necessary . . . [is] part of a trial judge's procedural arsenal.").  Other courts in this district also recently have permitted the Government to submit *ex parte*, *in camera* declarations to justify their withholding of records related to the FBI's investigation of Russian interference in the 2016 Presidential Election.  *See, e.g., Leopold v. Dep't of Treasury*, No. 16-cv-1827-KBJ (D.D.C.), Order Granting Motion For Leave to File In Camera, ECF No. 20, at 3 (explaining that "the receipt of *in camera* declarations is appropriate" where "a law enforcement agency indicates that no additional information concerning an ongoing investigation may be publicly disclosed without revealing precisely the information that the agency is entitled to withhold"; agreeing that *in camera* inspection is necessary to prevent interference with an ongoing investigation; and noting that "revealing more about the redacted information on the public record would disclose the very information that Defendants seek to withhold.").

For materials to be protected by the law enforcement privilege, it is not enough that they are generated by a law enforcement entity; they must also have a law enforcement purpose. *See, e.g.*, *Tax Analysts v. IRS*, 294 F.3d 71, 76-77 (D.C. Cir. 2002).  "'A law enforcement purpose exists where there is a rational nexus between the compiled document and a law enforcement duty of the agency and where there is a connection between an individual or incident and a possible security risk or violation of federal law.'"  *United Am. Fin. v. Potter*, 667 F. Supp. 2d 49, 59 (D.D.C. 2009) (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 179 (D.D.C. 2004)).

### a. The testimony requested by Buzzfeed falls squarely within the scope of the law enforcement privilege.

Because the law enforcement investigatory privilege is intended "to prevent interference with an investigation," it "bars disclosure of facts, and is based primarily on the harm to law enforcement efforts which might arise from public disclosure of investigatory files."  *Miller v. Mehltretter*, 478 F. Supp. 2d 415, 424 (W.D.N.Y. 2007) (citations omitted).  Information protected by this privilege thus includes the status of an investigation, investigative steps taken during an investigation, and informal deliberations and conclusions about evidence gathered during the course of an investigation.  *See FTC v. Timeshare Mega Media & Mktg. Grp., Inc.*, No. 10-civ-62000, 2011 WL 6102676, at *4 (S.D. Fla. Dec. 7, 2011).  Here, Buzzfeed expressly seeks testimony pertaining to what it believes are past and/or ongoing investigations, as well as testimony regarding what Buzzfeed believes is the existence and scope of presumed investigatory activities related to Russia.  *See* FBI Decl. ¶¶ 9-14.  Specifically, Buzzfeed seeks testimony about "[w]hether the Dossier was the subject of a counter-intelligence investigation, or any other form of investigation, as of January 10."  MTC at 12; *see also id.* at 12-13 (seeking disclosure of "[w]hether the content of the Dossier was being investigated as of January 10" and "that agencies of the US

Government were attempting to verify the contents and sourcing of the Dossier prior to January 10").

Buzzfeed concedes, however, that the Government has "declined to disclose . . . specific details" about any investigation into the so-called Dossier, which the Government Respondents have neither confirmed nor denied having or investigating.  MTC at 24; *id.* at 16 ("Movants are not aware of any . . . publicly-available testimony concerning the Dossier, and so they need the relief requested here to obtain it.").  Buzzfeed recognizes, then, that providing the requested testimony would force the Government Respondents to reveal information that it repeatedly has refused to disclose publicly—including the status of and actions taken in an investigation. *Timeshare Mega Media*, 2011 WL 6102676, at *4; FBI Decl. ¶¶ 9-10.

Further, compelling the Government Respondents to respond to Buzzfeed's questions clearly would interfere with and possibly cause grave harm to an ongoing investigation.  The compelled testimony could, *inter alia*, give targets and others intent on interfering with the investigation information necessary to conceal evidence or implement countermeasures; reveal potential witnesses or sources in a manner that risks compromising or influencing relevant testimony; and/or suggest a map of possible investigative activity yet to be taken by revealing the current focus and scope of the investigation, allowing persons of interest to plan for such activity. *See* FBI Decl. ¶¶ 11-13.

Disclosure of the requested testimony also would reveal investigatory procedures and techniques—including whether or not the Government is utilizing a particular investigative strategy or source in furtherance of an ongoing investigation.  Courts often have "recognized that the privilege may be applied in order to ensure the efficacy of investigative techniques in future cases."  *Shah v. Dep't of Justice*, 89 F. Supp. 3d 1074, 1080 (D. Nev. Feb. 2, 2015); *see also*

*Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 66-67 (1st Cir. 2007) (finding law enforcement privilege applicable where "the United States explain[ed] that the requested materials include information about sensitive law enforcement techniques that must remain confidential to allow the FBI to operate effectively").  Here, Buzzfeed is asking for information about if, when, and how the Government Respondents might have come to possess sensitive material, and what actions they have or have not taken based on that material; such information necessarily would reveal details about the investigative approaches of Respondents.  Moreover, the Government's interest in secrecy here is greater because the requested testimony concerns an ongoing, rather than completed, investigation.  *See In re: Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 WL 1790189, at *7 (E.D. Mich. May 10, 2011); FBI Decl. ¶ 11.

Although Buzzfeed suggests that the requested deposition should go forward and the Government should assert any applicable privileges in response to a "particular question at a deposition, and any disputes regarding privilege could then be adjudicated on the basis of an actual record," MTC at 14, Buzzfeed has supplied this Court and the Government Respondents sufficient specificity of the testimony subjects for a determination that on their face, those subjects seek privileged information.  *See* FBI Decl. ¶¶ 7-8.  Based on the FBI Declaration and Buzzfeed's enumerated requests for testimony, the Court should conclude that such testimony is squarely within the law enforcement investigatory privilege and should not be disclosed under compulsion.

> **b. Buzzfeed has not carried its burden to overcome the proper assertion of the law enforcement privilege.**

Because the law enforcement privilege is a qualified one, "the public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *A.N.S.W.E.R. Coalition*, 292 F.R.D. at 50 (citation omitted).  The D.C. Circuit has identified multiple factors that the district court should consider in balancing those interests;

nonetheless, no single factor is determinative.  *Id.*  Those factors include "the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information"; "whether the . . . investigation has been completed"; "whether the plaintiff's suit is nonfrivolous and brought in good faith"; "whether the information sought is available through other discovery or from other sources"; and "the importance of the information sought to the plaintiff's case."  *Id.* at 50-51 (citing *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988)).  The "district court has considerable leeway in weighing the different factors." *In re Sealed Case*, 856 F.2d at 272.

In this case, Buzzfeed has not made the factual showing necessary to overcome the Government's assertion of the law enforcement privilege.  Buzzfeed bears the burden of demonstrating a sufficient evidentiary need for the withheld information that outweighs the Government's interest in non-disclosure.  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *see also Reid v. Cumberland Cty.*, 34 F. Supp. 3d 396, 406 (D.N.J. 2013) (explaining that "party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest") (citation omitted).  In assessing need, courts consider the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the government's role in the litigation, and the possibility of future timidity by government employees.  *In re Sealed Case*, 121 F.3d at 737-38.  These considerations do not establish that Buzzfeed's "need" for the Government's testimony outweighs the public's interest in non-disclosure of law-enforcement-privileged information.

For the reasons previously explained, *see* Argument Pt. I, *supra*, Buzzfeed cannot, as a matter of law, demonstrate "need" for the testimony sought in the absence of showing relevance. And, in any event, a showing of relevance, in and of itself, "is insufficient to demonstrate the

particularized need necessary to overcome" the proper assertion of government privilege.  *SEC v. Merkin*, No. 11-23585, 2012 WL 2568158, at *5 (S.D. Fla. June 29, 2012) (citing *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993)).

The government's role in the litigation also weighs against Buzzfeed because the testimony is sought for a private defamation lawsuit, in which the government has no role or interest whatsoever.  Buzzfeed does not dispute that none of the Government Respondents named in this miscellaneous action are parties to the Florida litigation.  Relatedly, the seriousness of the litigation, which concerns Buzzfeed's liability for the publication of allegations that it admits were "unverified," pales in comparison to the Government's compelling need to protect the details about an ongoing and highly sensitive law enforcement investigation.  The testimony here may reveal information about investigative methods and sources, as well as the scope and focus of a pending investigation, making the seriousness of the Government's assertion of the privilege all the more acute.  *See* FBI Decl. ¶¶ 11-14.  Thus, Buzzfeed's characterization of its request as a narrow, inconsequential one – seeking to depose one or "no more than two" witnesses from FBI and/or ODNI on a limited set of nine "specific topics" is belied; those topics clearly encompass sensitive investigative matters, to the extent that the information sought by Buzzfeed exists.  MTC at 12-13; *see also* FBI Decl. ¶ 10.  As such, the factors courts consider in determining whether a party has overcome the law enforcement privilege, *see In re Sealed Case*, 121 F.3d at 737-38, militate against compelling the testimony sought by Buzzfeed here.  The law enforcement privilege encompasses all of the testimony Buzzfeed has requested, and Rule 45 therefore bars its disclosure.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Buzzfeed's motion to compel and enter judgment for the Government in this miscellaneous action.

Respectfully submitted this 13th day of November, 2017,

CHAD A. READLER
Acting Assistant Attorney General

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

*/s/ Anjali Motgi*
ANJALI MOTGI (TX Bar # 24092864)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
(202) 305-0879 (tel.)
(202) 616-8470 (fax)
anjali.motgi@usdoj.gov

*Counsel for Defendants*

## APPENDIX A: TEXT OF ARTICLE

So that it can be read without the visual distractions of a screenshot, and for the Court's convenience, the Government has copied and pasted the text of the Article below.

**These Reports Allege Trump Has Deep Ties To Russia**

A dossier, compiled by a person who has claimed to be a former British intelligence official, alleges Russia has compromising information on Trump. The allegations are unverified, and the report contains errors.

Originally posted on Jan. 10, 2017, at 6:20 p.m.
Updated on Jan. 10, 2017, at 9:09 p.m.
Ken Bensinger, BuzzFeed News Reporter
Miriam Elder, BuzzFeed News World Editor
Mark Schoofs, BuzzFeed News Investigations Editor

A dossier making explosive — but unverified — allegations that the Russian government has been "cultivating, supporting and assisting" President-elect Donald Trump for years and gained compromising information about him has been

1

---

circulating among elected officials, intelligence agents, and journalists for weeks.

The dossier, which is a collection of memos written over a period of months, includes specific, unverified, and potentially unverifiable allegations of contact between Trump aides and Russian operatives, and graphic claims of sexual acts documented by the Russians. BuzzFeed News reporters in the US and Europe have been investigating various alleged facts in the dossier but have not verified or falsified them. CNN reported Tuesday that a two-page synopsis of the report was given to President Obama and Trump.

Now BuzzFeed News is publishing the full document so that Americans can make up their own minds about allegations about the president-elect that have circulated at the highest levels of the US government.

The document was prepared for political opponents of Trump by a person who is understood to be a former British intelligence agent. It is not just unconfirmed: It includes some clear errors. The report misspells the name of one company, "Alpha Group," throughout. It is Alfa Group. The report says the settlement of Barvikha, outside Moscow, is "reserved for the residences of the top leadership and their close associates." It is not reserved for anyone, and it is also populated by the very wealthy.

a

The Trump administration's transition team did not immediately respond to BuzzFeed News' request for comment. However, the president-elect's attorney, Michael Cohen, told *Mic* that the allegations were absolutely false.

"It's so ridiculous on so many levels," he said. "Clearly, the person who created this did so from their imagination or did so hoping that the liberal media would run with this fake story for whatever rationale they might have."

And Trump shot back against the reports a short time later on Twitter.
His former campaign manager and current senior White House adviser, Kellyanne Conway, also denied the claims during an appearance on *Late Night With Seth Meyers,* adding that "nothing has been confirmed." She also said Trump was "not aware" of any briefing on the matter.

The documents have circulated for months and acquired a kind of legendary status among journalists, lawmakers, and intelligence officials who have seen them. *Mother Jones* writer David Corn referred to the documents in a late October column.

Harry Reid spokesman Adam Jentleson tweeted Tuesday that the former Senate Democratic leader had seen the documents before writing a public letter to FBI Director James Comey about Trump's ties to Russia. And CNN reported Tuesday that Arizona Republican John McCain gave a "full copy" of the memos to Comey on Dec. 9, but that the FBI already had copies of many of the memos.

**If you have tips related to this story, write us at trumpstories@buzzfeed.com. To send us information confidentially, go here.**

2

---

**Read the report here:**
[Embedded document: So-called Dossier]

3

---

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2017, a copy of the foregoing pleading was filed electronically via the Court's ECF system which sent notification of such filing to counsel of record for all parties.

  /s/ Anjali Motgi                       _
ANJALI MOTGI
Texas Bar # 24092864
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
(202) 305-0879 (tel.)
(202) 616-8470 (fax)
anjali.motgi@usdoj.gov

*Counsel for Defendants*